**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Meridian PO Finance LLC,<br><br>Plaintiff,<br><br>v.<br><br>OTR Tire Group Incorporated, et al.,<br><br>Defendants. | No. CV-20-00446-PHX-MTL<br><br>**ORDER** |

Defendants XPO Global Forwarding, Inc. and XPO Logistics ("XPO") move to transfer this case to the Southern District of Texas, or to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). (Doc. 25.) Alternatively, XPO seeks to stay the negligent bailment and conversion claims in this case. Defendant Chris Dellinges has also moved to transfer the case to the Northern District of Texas or to the Southern District of Texas. (Doc. 15 at 2 ¶¶ 2, 5.) For the following reasons, the motions are denied.[1]

**I.   BACKGROUND**

   **A.   Factual Allegations**

The following facts are taken from the Complaint. (Doc. 1.) Plaintiff Meridian PO Finance LLC ("Plaintiff" or "Meridian") is an Arizona finance company doing business in Maricopa County, Arizona. (*Id.* ¶ 10.) Meridian asserts that it is "one of several victims of the defendants' organized scheme to defraud companies and individuals out of millions of

---

[1] The parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

dollars through fraudulent transactions related to oversized off-the-road ('OTR') mining tires." (*Id*. ¶ 1.)

Defendant Chris Dellinges ("Mr. Dellinges") resides in Texas. (*Id*. ¶ 11.) He approached Meridian with an investment opportunity to buy and sell oversized OTR mining tires in July 2014. (*Id*. ¶ 27.) Mr. Dellinges allegedly represented that Defendant OTR Tire Group, Inc. ("OTR Tire Group") sought short-term financing to purchase OTR mining tires that it would then sell to its existing customers. (*Id*. ¶¶ 28–29.) Mr. Dellinges asserted, among other facts, that once purchased the tires would be shipped to "XPO's care" at a storage facility in Houston, Texas.[2] (*Id*. ¶ 37.) XPO is a "publicly traded company with a reputation for being a reliable provider of services regarding bulk freight and storage."[3] (*Id*. ¶ 39.)

In anticipation of the proposed transaction, Meridian flew representatives to Houston in August 2014. Defendant Afif Baltagi, a former XPO employee who also resides in Texas, provided a tour of the facility and assured Meridian that the tires "would be secure" and "would not come or go without Meridian's knowledge and permission." (*Id*. ¶¶ 46–51.) It also flew representatives to the Rio Tinto mine in Boron, California, from which the tires would be purchased. Meridian physically inspected the tires and "confirmed that they were, in fact, the tires which they intended on financing." (*Id*. ¶¶ 58–61.) Meridian ultimately entered into a finance agreement with OTR Tire Group in September 2014. (*Id*. ¶¶ 52–53.) The next month, Meridian representatives returned to the Houston facility and confirmed that the OTR tires had arrived. (*Id*. ¶¶ 85–86.)

Meridian alleges that around the same time, in August 2014, Defendant Jason

---

[2] Meridian states that XPO leases the facility. (*Id*. ¶ 37.) XPO states that it did not lease the storage facility, but, rather, leased a small office location from Defendant Roadmaster Trucking that is "adjacent to the 'storage facility' . . . owned and operated by Roadmaster." (Doc. 25 at 4 n.2.)

[3] The Complaint names "XPO Global Forwarding, Inc. d/b/a XPO Global Logistics, Inc. and XPO Logistics" (Doc. 1 at 1 n.1); XPO asserts that the "real party in interest is XPO Global Forwarding Inc. XPO Logistics is a holding company and the parent of its wholly owned subsidiary, XPO Global Forwarding." (Doc. 25 at 2 n.1.)

Adkins ("Mr. Adkins") approached it to finance separate OTR tire transactions for Midwest Coal LLC ("Midwest"), also a defendant in this case. (*Id*. ¶ 96.) The form of the proposed transactions was "identical" to those already in progress with OTR Tire Group: "Midwest would find a seller and a buyer and Meridian would provide short-term financing for the transaction." (*Id*. ¶ 97.) During Meridian's August 2014 visit to the Houston storage facility, Mr. Baltagi "confirmed that XPO would follow the same protocol and procedure" with respect to the Midwest transaction as it was following with the OTR Tire Group transaction. (*Id*. ¶¶ 101–102.) Meridian entered into a finance agreement with Midwest in September 2014 and five purchase transactions over the coming months. (*Id*. ¶ 103.)

By the middle of 2015, Meridian alleges that it had provided $4,858,800 in financing to OTR Tire Group and Midwest. It received a security interest in 168 OTR tires in exchange. (*Id*. ¶¶ 201–02). Following the tires' delivery to Houston, "OTR Tire Group and Midwest made numerous representations regarding alleged purchasers." (*Id*. ¶ 203.) Those transactions all ultimately "fell through for a variety of reasons." (*Id*.) Over time, OTR Tire Group and Midwest failed to repay their loans to Meridian. (*Id*. ¶ 206).

Meridian ultimately demanded that OTR Tire Group and Midwest "assign their interests in the OTR tires which secured Meridian's loans." (*Id*.) In January 2017, both OTR Tire Group and Midwest executed consent agreements that assigned title in designated tires to Meridian. (*Id*. ¶¶ 207–210.) Midwest also pledged an additional 82 tires to Meridian. (*Id*. ¶ 211.) Meridian asserts that it did not know that, by that time, "Defendants and the business entities that they worked with and through had: i) either pledged the OTR Tire Group Tires and the Midwest Tires as collateral in numerous transactions with other investors; or ii) assigned the title to the OTR Tire Group Tires and the Midwest Tires to other entities." (*Id*. ¶ 217.)

In January 2018, Mr. Adkins filed for bankruptcy in the Southern District of Ohio for one of his business entities, Landash Corporation. (*Id.* ¶ 218). He also filed for personal bankruptcy in February 2020. (*Id.* ¶ 219.) Mr. Adkins did not notify Meridian of, or list it as a creditor in, either proceeding. (*Id.* ¶¶ 221–23.) As part of the bankruptcy proceedings,

the designated bankruptcy trustee marshaled the OTR tires at the Houston storage facility. (*Id.* ¶ 228). Of the 214 tires in which Meridian had a purported ownership interest or a security interest at that point, "there were only 29 tires which were at the Houston Facility that could be confirmed to be the tires in which Meridian had invested." (*Id.* ¶ 229.)

### B.  Procedural History

Meridian filed its Complaint on February 28, 2020, asserting 17 total claims against Defendants XPO, OTR Tire Group, Mr. Dellinges, Mr. Adkins, Midwest Coal LLC, LAD ImpEx Corporation, Mr. Baltagi, and Roadmaster Trucking. (Doc. 1.) Meridian states that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to Meridian's claims occurred in this district," or pursuant to 28 U.S.C. § 1391(b)(3) because "there is no district in which an action may otherwise be brought and every defendant is subject to the personal jurisdiction of this Court." (*Id.* ¶ 9.)

Mr. Dellinges has filed an "Answer and Motion to Dismiss."[4] (Doc. 15.) It states, in part, that "Plaintiff's claims against Defendant Dellinges should be dismissed or in the alternative transferred to Federal District Court of either the Southern or Northern District Court of Texas pursuant to 28 U.S.C. 1404." (*Id.* at 2.) He provides no further support for this argument. Mr. Baltagi has filed an answer. (Doc. 16.) XPO has filed an answer and crossclaim against Mr. Baltagi (Doc. 20), in addition to the present motion to transfer venue. (Doc. 25.)  That motion is now fully briefed. (Docs. 29, 32.) The parties have also, at the Court's request, provided supplemental briefing. (Docs. 41, 49, 55.)

Defendants OTR Tire Group, Mr. Adkins, Midwest Coal, LAD ImpEx Corporation, and Roadmaster Trucking have been served (or waived service), but have not timely appeared in this case. (Docs. 35–39.) Following XPO's filing of the present motion, upon Meridian's application the Clerk of the Court entered default against these five defendants. (Docs. 44–48, 50–54.)

---

[4] The Court previously ruled that "as far as the Motion seeks dismissal under Rule 9(b) and Rule 12(b)(2) and (6), Fed. R. Civ. P. it is denied." (Doc. 26.)

- 4 -

## II. LEGAL STANDARD

"'[V]enue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district court in general." 28 U.S.C. § 1390(a). Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The first step in the § 1404(a) analysis is to determine whether the transferor and transferee courts are proper venues. *See Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013). The court then "must consider public factors relating to 'the interest of justice' and private factors relating to 'the convenience of the parties and witnesses.'" *Id.* at 1212–1213 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Motions to transfer under § 1404(a) are within a district court's discretion and must be determined according to an "'individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, (1988)).

## III. MOTION TO TRANSFER

XPO moves to transfer venue pursuant to 28 U.S.C. § 1404(a). It argues that, although this case could proceed in the District of Arizona, considerations of judicial economy and convenience warrant a transfer to the Southern District of Texas (Houston Division) or the Southern District of Ohio (Eastern Division). XPO states that this case is "just one in a string of lawsuits stemming from alleged fraudulent tire transactions . . . designed to dupe companies out of millions of dollars." (Doc. 25 at 2.) It asserts that in a "series of strikingly similar cases with many of the same defendants," three different plaintiffs have filed lawsuits in the Southern District of Ohio, as has one in the Southern District of Texas.[5] XPO argues that the Court should transfer this case to either

---

[5] The Southern District of Ohio cases are: *Abington Emerson Capital, LLC v. Adkins, et al.*, Case No. 2:17-cv-00143; *Great Southland Limited v. Landash Corp., et al.*, Case No. 2:17-cv-00719; *Kirby Development LLC. v. XPO, et al.*, Case No. 18-CV-500. The Southern

district—with a preference for the Southern District of Texas—to "prevent inconsistent adjudication" and to "save the resources of the courts and parties." (*Id*. at 2-3.) XPO seeks to transfer the entire case. (*Id*. at 3; Doc. 41 at 2.)

XPO's motion does not reference any forum selection clauses at issue. Nonetheless, Meridian argues in response that forum selection clauses require this case to be heard in Arizona. Forum selection clauses must be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 59 (2013) (citing *Stewart Org.*, 487 U.S. at 29). A forum selection clause is presumptively valid unless the party challenging the clause can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Accordingly, the Court will first address Meridian's forum selection clause argument.

### A. Forum Selection Clauses

Federal law applies to interpretation of forum selection clauses. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). As noted, a forum selection clause is presumptively valid. *See M/S Bremen*, 407 U.S. at 15. The United States Supreme Court has held that the presence of a valid forum selection clause changes the standard § 1404(a) analysis: "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co*, 571 U.S. at 62.

Meridian argued in its response that the "agreements at issue in this matter contain forum selection clauses that require five of the eight parties to litigate in Arizona." (Doc. 29 at 1.) As noted, since that time, the Clerk of the Court has entered default against non-answering defendants LAD ImpEx Corporation, OTR Tire Group, Roadmaster Trucking, Jason Adkins, and Midwest Coal LLC. (Docs. 50–54.) The Court will first address the

---

District of Texas case is *Vecron Exim Ltd. v. XPO Logistics, Inc. et al.*, Case No. 4:18-cv-02394.

- 6 -

status of the answering defendants—Mr. Dellinges, XPO, and Mr. Baltagi—and then turn to the defaulting defendants.

### 1. Mr. Dellinges

On September 5, 2014, Mr. Dellinges signed a guaranty with Meridian. (Doc. 1-2 at 15–19.) After Mr. Dellinges approached Meridian regarding the OTR Tire Group investment opportunity, Meridian required that he—along with Mr. Adkins and a non-party, John Eckerd—"sign personal guaranties with respect to OTR Tire Group's obligations." (*Id.* ¶ 54.) Meridian asserts that Mr. Dellinges ultimately breached his agreement, which includes the following forum selection provision:

> [Mr. Dellinges] acknowledges that by execution and delivery of this Guarantee, Guarantor has transacted business in the State of Arizona and [Mr. Dellinges] hereby voluntarily submits himself or herself, consents to, and waives any defense, to the jurisdiction of courts located in the State of Arizona as to all matters relating to or arising from this Guarantee. Except as expressly agreed in writing by [Meridian], the state and federal courts located in the state of Arizona shall have sole and exclusive jurisdiction of any and all claims, disputes, and controversies arising under or relating to this guarantee. No lawsuit, proceeding, or any other action relating to or arising under this Guarantee may be commenced or prosecuted in any other forum except as expressly agreed in writing by [Meridian]."

(Doc. 1-2 at 18-19.)

Neither XPO nor Mr. Dellinges address this provision in their briefing. XPO's motion asserts that there are a "variety of agreements referenced in Meridian's Complaint," such that there is no "one relevant agreement." (Doc. 25 at 11.) In its reply, XPO also states that "[a]s a practical matter," the forum selection clauses relating to defendants OTR Tire Group, Mr. Dellinges, Mr. Adkins, and Midwest "carry little to no weight" because OTR Tire Group, Mr. Adkins, and Midwest are in default. (Doc. 32 at 5.) It does not directly address Mr. Dellinges's guaranty.

Mr. Dellinges does not reference the guaranty (or any substantive law) in his motion.

In a later-filed motion for reconsideration,[6] Mr. Dellinges stated, "[w]hile forum selection clauses are recognized, a forum selection clause on its own is insufficient to establish personal jurisdiction over foreign individual defendant without more." (Doc. 42 at 3) (citing *Burger King Corporation v. Rudzewicz*, 105 S. Ct. 2174 (S. Ct. 1985)). That is not an accurate statement of the law. In *Burger King*, the Supreme Court stated that a contractual *choice-of-law* provision "standing alone would be insufficient to confer jurisdiction." *Id.* at 482. The same is not true of a forum selection clause. Indeed, the Ninth Circuit has recognized that a forum selection clause alone *is* sufficient to confer personal jurisdiction. *See S.E.C. v. Ross,* 504 F.3d 1130, 1149 (9th Cir. 2007); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) ("Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound.") (citations omitted).

The guaranty's forum selection clause controls with respect to Meridian's claims against Mr. Dellinges. "The guaranty includes a valid forum-selection clause that requires submission to Arizona courts, and under which [Mr. Dellinges] waived [his] right to assert that the suit or proceeding is brought in an inconvenient forum." *Spirit Master Funding X LLC v. BCB Holdings Inc.*, No. CV-18-00957-PHX-DLR, 2018 WL 4220857, at *2 (D. Ariz. Sept. 5, 2018). It requires Mr. Dellinges to litigate "claims, disputes, and controversies arising under or relating to" the guaranty in Arizona courts. (Doc. 1-2 at 18–19.) The Complaint asserts a claim for breach of contract against Mr. Dellinges specifically (Count V), as well as claims for fraud, conversion, civil conspiracy, RICO violations, and alter ego against all Defendants (Counts IX, X, XII, XIV, XVII). Upon review of the Complaint, the Court finds that these claims all "arise under" or "relate to" Mr. Dellinges's guaranty, such that he is required to litigate in Arizona.

---

[6] The Court denied the motion for reconsideration but noted that it would consider the filing to the extent it constituted Mr. Dellinges's supplemental response brief. (Doc. 43.)

**2.    XPO**

**a.    Subject to Forum Selection Clause**

The only agreement referenced in the Complaint involving XPO is its "Warehouse Agreement" with defaulting defendant OTR Tire Group. (Doc. 1 ¶¶ 62–70; Doc. 1-2 at 27.) The Warehouse Agreement does not contain a forum selection clause. Meridian does not dispute this fact. (Doc. 29 at 5.) Accordingly, XPO is not *party* to an agreement containing a forum selection clause in this case.

The Court next addresses whether XPO is subject to a forum selection clause as a non-party. This is a "thornier question" than whether Mr. Dellinges is subject to a binding forum selection clause. *Spirit Master Funding X LLC*, 2018 WL 4220857, at *3. XPO asserts that it "does not have a single agreement with Meridian that requires the case to be litigated in Arizona." (Doc. 32 at 4.) XPO also cites to the general principle that a "contract cannot bind a nonparty." (*Id.*) (quoting *Equal Opportunity Emp't Comm'n*, 534 U.S. 279, 294 (2002)).

Nonetheless, as Meridian emphasizes in its response, the Ninth Circuit has made clear that a forum selection clause extends to "a range of transaction participants, parties and non-parties." *Manetti–Farrow, Inc.*, 858 F.2d at 514 n.5. In *Manetti–Farrow*, the plaintiff argued that the forum selection clause at issue only applied to the contract's actual signatories. The Ninth Circuit instead found that the clause applied to non-signatories because "the alleged conduct of those non-parties is closely related to the contractual relationship." *Id.* at 509. *See also Holland Am. Line Inc.*, 485 F.3d at 456 (valid forum selection clauses are to be enforced against nonparties "where the alleged conduct of the nonparties is closely related to the contractual relationship").

Here, in addition to his personal guaranty, Mr. Dellinges was also the signatory on behalf of OTR Tire Group to the Purchase Order Financing Loan and Security Agreement with Meridian (the "OTR Finance Agreement"). (Doc. 1-2 at 12.) That agreement contains a forum selection provision stating:

> The parties agree that any suit, action or proceeding arising out

>of the subject matter hereof, or the interpretation, performance or breach of this Agreement, shall, if [Meridian] so elects, be instituted in the United States District Court for the District of the Controlling State in which [Meridian's] chief executive office is located or any court of said state (the "Acceptable Forums"), each party agrees that the Acceptable Forums are convenient to it, and each party irrevocably submits to the jurisdiction of the Acceptable Forums, irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement, and waives any and all objections to jurisdiction or venue that it may have under the laws of the Controlling State or otherwise in those courts in any such suit, action or proceeding.[…]

(Doc. 1-2 at 11 ¶ 21.6.) The "Controlling State" is defined as Arizona.[7] (*Id.* at 2 ¶ 1.6.) The same provisions are contained in Meridian's Purchase Order Financing Loan and Security Agreement with Midwest (the "Midwest Finance Agreement"). (Doc. 1-3 at 2 ¶ 1.6; 11 ¶ 21.6.)

The Court looks to XPO's "alleged conduct" to determine whether it is subject to these forum selection clauses. *Manetti–Farrow, Inc.*, 858 F.2d at 509. Meridian alleges that when Mr. Dellinges first approached Meridian, he named XPO as OTR Tire Group's "Agent/Forwarder." (*Id.* ¶¶ 27-30.) Mr. Dellinges also told Meridian that, once OTR Tire Group purchased the tires at issue, "they would be shipped to the Houston Facility into XPO's care." (*Id.* ¶ 37.) Meridian ultimately "agreed to provide financing for the OTR Tire Group Michelin 40 Tires because Meridian trusted that XPO was, in fact, a reliable party that would secure and protect Meridian's collateral and security interest." (*Id.* ¶ 42.) These

---

[7] As the signatory to this agreement on behalf of OTR Tire Group, Mr. Dellinges is also likely bound to litigate in Arizona for this independent reason. "With one exception, every district court in our circuit that has considered whether to apply a forum-selection clause to a corporate officer or related company that was not part of the agreement to which it applies in his or her individual capacity has enforced that forum-selection clause, provided the claims in the suit related to the contractual relationship." *Ultratech, Inc. v. Ensure NanoTech (Beijing), Inc.*, 108 F. Supp. 3d 816, 822 (N.D. Cal. 2015). In light of the determination above that Mr. Dellinges is bound to litigate in Arizona due to his personal guaranty, the Court need not reach this issue.

- 10 -

allegations, which address XPO's reputation more than its conduct, would not, in themselves, subject XPO to a forum selection clause.

Nonetheless, Meridian also alleges that XPO was actively involved in the alleged fraudulent scheme. For example, on the same day that Meridian and OTR Tire Group entered into the OTR Financing Agreement, OTR Tire Group and XPO entered into a "Warehouse Letter" that "would require that XPO honor and protect the security interest that Meridian had in the OTR Tire Group Tires." (*Id*. ¶ 62–64; Doc. 1-2 at 27–28.) Meridian alleges that this agreement was made at its insistence. In it, Mr. Baltagi affirmed, on behalf of XPO, that it had "not been notified, in writing or otherwise, that any person or entity other that [Meridian] holds a security interest" in the inventory, that it would give Meridian access to the warehouse, and that "[a]ny lien, interest, or encumbrance" that XPO had or developed in the inventory was subordinate to Meridian's interest. (Doc. 1-2 at 27–28.) Meridian also would not have entered into the Midwest Finance Agreement "[b]ut for Meridian's ongoing relationship with XPO and the representations made by Baltagi and XPO." (Doc. 1 ¶¶ 97-100, 128.) XPO also confirmed that the OTR tires were delivered, safe, and secured. (*Id*. ¶ 86, 216.) Meridian also alleges that, ultimately, "Defendants and the business entities that they worked with and through" pledged the tires as collateral in other transactions or assigned the title to other entities. (*Id*. ¶ 217.)

Meridian brings claims of breach of contract, breach of the duty of good faith and fair dealing, and negligent bailment against XPO (Counts VI–VII, XI) and fraud, conversion, civil conspiracy, RICO violations, and alter ego against all Defendants (Counts IX, X, XII, XIV, XVII). The Court finds that XPO's alleged conduct with respect to these claims is "closely related" to the OTR and Midwest Finance Agreements. (Doc. 1-3 at 11.) Meridian alleges that XPO was involved at each stage of its interactions with OTR Tire and Midwest, from being those entities' "agent/forwarder," to assuring Meridian that its collateral was safe, to Meridian's allegations that the defendants worked together to pledge the tires as collateral. Accordingly, the Court finds that XPO is subject to those agreements' forum selection clauses.

The Court emphasizes, in so finding, that it does not intend to make any indications as to the merits of these allegations. Rather, in addressing a forum selection clause's applicability, the Court is required to focus on the Complaint's allegations. *See Vistage Worldwide, Inc. v. Knudsen*, No. 19-CV-01351-W (JLB), 2020 WL 71140, at *7 (S.D. Cal. Jan. 7, 2020) ("[C]ourts conducting *Manetti–Farrow* analysis have looked to the nature of the claims relative to the contract containing the forum selection clause.") Upon review of the allegations described above, the Court is compelled to conclude that XPO is bound to the forum selection clauses contained in the Financing Agreements. *See, e.g., Pat Pellegrini Flooring Corp. v. ITEX Corp.*, No. CV. 09-376-AC, 2010 WL 1005318, at *10 (D. Or. Feb. 9, 2010) (finding non-contracting defendants subject to a forum selection clause where they were "involved in every aspect of [the plaintiff's] contractual relationship with [the contracting party]"); *Facebook Inc. v. Namecheap Inc.*, No. CV-20-00470-PHX-GMS, 2020 WL 6585534, at *3 (D. Ariz. Nov. 10, 2020) (finding a defendant bound to an agreement's forum selection clause "regardless of whether it is a signatory" under *Manetti-Farrow*).

### b. Validity of Forum Selection Clause

As XPO is "subject to the forum selection clause, the Court's next task is to determine if the forum selection clause is valid." *Rogers v. Wesco Properties, LLC*, No. CV09-08149-PCT-MHM, 2010 WL 3081352, at *8 (D. Ariz. Aug. 4, 2010). XPO argues that the clause does not mandate litigation in Arizona because it is a "permissive" rather than "mandatory" clause. (Doc. 32 at 4.) A mandatory forum selection clause requires litigation to proceed in a particular jurisdiction, while a permissive forum selection clause simply bestows jurisdiction to that forum. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). When a forum selection clause is permissive, "the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). XPO points to language that the case "shall, if [Meridian] so elects," be filed in the District of Arizona. (Doc. 32 at 4.)

This argument is not convincing. The Court recognizes that "use of the word 'shall' does not, by itself, convert a permissive forum selection clause into a mandatory one." *Calisher & Assocs., Inc. v. RGCMC, LLC*, No. CV08-06523-MMM (EX), 2008 WL 4949041, at *4 (C.D. Cal. Nov. 17, 2008). Rather, "forum selection clauses must be read as a whole." *Id*. Upon review of the clause in its entirety, it is clear to the Court that, at least in the instance in which Meridian elected to file suit in the District of Arizona, that forum is mandatory. *See Docksider*, 875 F.2d at 763 (finding the clause "Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia" to be a mandatory clause despite the absence of words "exclusively" or "only").This is further emphasized by the portion of the clause stating, "[s]hould such proceeding be initiated in any other forum, [OTR Tire Group or Midwest] waives any right to oppose any motion or application made by [Meridian] as a consequence of such proceeding having been commenced in a forum other than an Acceptable forum." (Doc. 32 at 4.) The Court need not reach the more nuanced questions of the clause's scope should, for example, Meridian have filed suit in another forum.

XPO also argues in its supplemental brief that the forum selection clause in this case does not require litigation in Arizona because it states that Meridian may bring suit in the state where it has its "chief executive office." (Doc. 55 at 2 n.1.) XPO has included a complaint filed by Meridian in the Superior Court of California stating that Meridian's principal place of business is in Chula Vista, California.[8] (Doc. 55 at 2 n.1; Doc. 56.) XPO did not raise this argument in its motion. Nonetheless, the Court is not convinced by this argument, either. The forum selection clause states that a suit "shall, if Lender so elects, be instituted in the United States District Court for the District of the Controlling State in which the Lender's chief executive office is located or any court of said state. . ." (Doc. 1-2 at 11 ¶ 21.6.) The Court readily acknowledges that this phrase is not the picture of clarity. But the term "United States District Court of the District of the Controlling State," coupled

---

[8] *See Meridian PO Fin., LLC v. Wave TSG*, Cal. Sup. Ct., Case No. 37-2019-00029838-CU-BC-CTL (June 11, 2019). (Doc. 56 at 2.)

with the "Controlling State" defined as "Arizona," makes evident that the forum at issue is this district. Further, while expressing concern over the possibility that Meridian has not made consistent representations in its filings in different jurisdictions, the Court will take Meridian's word, as stated in the Complaint in this case, that it is an "Arizona limited liability company doing business in Maricopa County, Arizona."[9] (Doc. 1 ¶ 10.)

For all of these reasons, the Court will apply the forum selection clause contained in the OTR and Midwest Finance Agreements against XPO and require it to litigate in the District of Arizona.

### 3. Mr. Baltagi

Mr. Baltagi, a former XPO employee and the subject of XPO's crossclaim, is not party to a forum selection clause.[10] For the same reasons as addressed above, Mr. Baltagi may also be subject to the forum selection clause contained in the OTR and Midwest Finance Agreements as XPO's alleged agent. *See Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1119 (E.D. Cal. 2014) ("[A] person may enforce a forum selection clause he did not sign if he was . . . an agent intended to benefit from the contract[.]") (citation omitted). Nonetheless, due to the presence of other valid forum selection clauses requiring litigation in Arizona, and the parties' mutual insistence that the *entire* case be either transferred or retained in this district, the Court need not address Mr. Baltagi's status in detail.

### 4. Defaulting Defendants

As noted, the Clerk of the Court has entered default against non-answering defendants OTR Tire Group, Jason Adkins, Midwest, LAD ImpEx Corporation, and Roadmaster Trucking. (Docs. 50–54.) Although the Court will also not address this issue in detail, it appears that Mr. Adkins, Midwest, and OTR Tire Group are subject to forum

---

[9] The Court notes that the assertion that Meridian is "doing business in Maricopa County, Arizona" is not necessarily the same as indicating that its principal place of business is in Maricopa County, Arizona. Nonetheless, for the reasons described above, the Court need not further address this issue.

[10] Mr. Baltagi was XPO's signatory to the "Warehouse Letter" between XPO and OTR Tire Group, but that document did not contain a forum selection clause. (Doc. 1-2 at 28.)

selection clauses requiring litigation in Arizona. (Doc. 1-2 at 12, 25; Doc. 1-3 at 12.) XPO states that the "agreements related to Adkins, Midwest, and OTR Tires are irrelevant because those parties are in default." (Doc. 32 at 5.) The Court does not agree that those agreements are "irrelevant." A "court may set aside an entry of default for good cause. . ." Fed. R. Civ. P. 55(c). To determine "good cause," a court must "consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party. *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citation omitted). It remains at least conceivable that the defaults entered against these defendants could be set aside. Were this case to be transferred to Texas or Ohio, the Court anticipates that these parties could, if no longer in default, successfully move to transfer the case back to this district. This scenario does not weigh in favor of the "convenience" required for a § 1404(a) transfer.

**B.     Section 1404(a) Analysis**

Having found that forum selection clauses require at least Mr. Dellinges and XPO to litigate in this district, as well as three defaulting parties, the Court turns to XPO's arguments under 28 U.S.C. § 1404(a). As a general matter, when considering a § 1404(a) motion to transfer, a court must first establish whether the action could have originally been brought in the moving party's preferred court. 28 U.S.C. § 1404(a). Meridian does not dispute that the case could have been brought in the Southern District of Texas or Southern District of Ohio. (Doc. 29.) Second, courts must consider the convenience of parties and witnesses and the interests of justice. *Id.* The Ninth Circuit provides eight non-exhaustive factors to weigh convenience:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums,

>  (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d 498–500.

That said, a valid, applicable forum-selection clause changes the typical § 1404(a) analysis. *See Atl. Marine Const. Co., Inc.*, 571 U.S. at 63; *see also Jones*, 211 F.3d at 498–99 (the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis). Once a court determines that a forum-selection clause exists, it must conclude that all the "private interest" factors "weigh[] 'entirely in favor of the preselected forum.'" *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087–88 (9th Cir. 2018) (quoting *Atl. Marine*, 571 U.S. at 62 n.6). A court may consider public interest factors, but they will "rarely" defeat a motion to transfer in the face of a valid, applicable forum-selection clause. *Id.* at 1088 (quoting *Atl. Marine*, 571 U.S. at 64). As a practical matter, a forum-selection clause should control except in "unusual cases." *Id.* at 1088.

Public-interest factors that a court may consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). XPO does not address the issue of court congestion or the interest in having localized controversies decided at home.[11] XPO does argue that "even if Arizona law were to apply to all of Meridian's claims (and it likely will not), 'federal courts routinely are tasked with applying the laws of other states.'" (Doc. 25 at 11) (quoting *Cheval Farm LLC v. Chalon*, No. CV-10-01327-PHX-ROS, 2011 WL 13047301, at *2 (D. Ariz. Jan. 19, 2011)). The Court agrees with Meridian that "XPO does not provide any meaningful analysis of what law should govern this case." (Doc. 29 at 7.) Nonetheless, the parties agree that this factor is "neutral." (Doc. 29 at 8; Doc. 32 at 6.)

---

[11] Meridian does reference, in the introduction to its motion, that "the defendants' nation-wide Ponzi scheme victimized Arizona investors, taking money that came from Arizona's banks." (Doc. 29 at 1.) The Court does not afford this statement, in itself, great weight.

- 16 -

The party opposing the forum selection clause bears the burden of showing that public-interest factors "overwhelmingly" disfavor enforcing the forum selection clause. *Atl. Marine Const. Co.*, 571 U.S. at 67 (2013). As XPO has not met that burden, the Court finds that this case does not present the "extraordinary circumstances" necessary to override the forum-selection clauses. *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1031 (N.D. Cal. 2020).

### C. Severance

In its request for supplemental briefing, the Court ordered XPO to clarify whether "it seeks transfer of the entire case, or of only the claims against it, and its justification in either instance." (Doc. 40 at 1.) XPO asserted that it "seeks a transfer of the **entire** case in the interests of judicial economy, fairness, and efficiency." (Doc. 41 at 2.) Meridian, for its part, "agree[s] on some of the basic legal principles" at issue, but contends that the result is that the entire case should remain in this district. (Doc. 49 at 2.) The Court agrees with many of XPO's assertions, including that it is "highly desirable" that all of a plaintiff's claims be tried in a single forum. (Doc. 41 at 3) (quoting *United Truck & Equip., Inc. v. Curry Supply Co.*, No. CV08-01046-PHX-GMS, 2008 WL 4811368, at *13 (D. Ariz. Nov. 5, 2008)). The Court also finds that many of XPO's arguments would be well-taken were it the only defendant in this case. But by insisting that the entire case be transferred, XPO has effectively forced the Court to consider the status of XPO's co-defendants. For these reasons, the Court will deny XPO's motion to transfer and Mr. Dellinges's motion, to the extent that it seeks a transfer.[12]

### IV. MOTION TO STAY

XPO argues, alternatively, that the Court should stay Meridian's negligent bailment

---

[12] The Court also notes that XPO's motion appears to presume that the Southern District of Texas (Houston Division), or the Southern District of Ohio (Eastern Division), would consolidate the transferred case with a pending case. "The feasibility of consolidation is a significant factor in deciding a transfer motion." *Cambridge Filter Corp. v. Int'l Filter Co.*, Inc., 548 F.Supp. 1308, 1312 (D. Nev. 1982). As the parties have not addressed this issue, the Court will not either, but notes that it does not necessarily presume that a transferred case would have been consolidated with a pending matter in either district.

- 17 -

claim (against XPO) and conversion claim (against all Defendants) pending resolution of the bankruptcy adversary proceeding involving Mr. Adkins in the U.S. Bankruptcy Court for the Southern District of Ohio (*In re Landash*, Case No. 2:18-bk-50300).[13] XPO cites to 11 U.S.C. § 362, which extends an automatic bankruptcy stay to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). XPO argues that Meridian's negligent bailment and conversion claims "do just that" by seeking a determination that Meridian "is or was entitled to possession and/or control over property of the bankruptcy estate, namely the tires." (Doc. 25 at 16.) XPO also notes that judicial economy supports staying those claims during the pendency of the bankruptcy proceeding, as the "Bankruptcy Court will undoubtedly distribute proceeds from the sales of the tires—perhaps to Meridian—which could prove to be significant sums of money and which will affect its entitlement to damages in this case." (*Id*. at 17.)

Meridian does not dispute the relevant law, but responds that XPO's factual and procedural assertions are "oversimplified and incorrect." (Doc. 29 at 16.) It states, for example, that "of the 148 tires that the trustee sold, the trustee only had anything to do with 29 of the 214 tires in which Meridian had an interest." (*Id*.) Meridian also asserts that "in all practicality, with the respective procedural postures of the cases, the *Landash* matter will resolve itself long before this case is adjudicated." (*Id*.)

In light of the parties' divergent characterizations, the Court does not intend to wade into the factual nuances of the bankruptcy proceeding at this juncture. The Court is mindful of XPO's concerns and the possibility of inconsistent (or incompatible) results in the adversary proceeding and this case. Nonetheless, the Court also does not find that discovery on the negligent bailment and conversion claims needs to be halted at this time. Further, "section 362(a) does not preclude generation of information regarding claims by or against a non-debtor party, even where that information could eventually adversely affect the

---

[13] Upon the Court's review of the docket, the adversary proceeding remains pending as of the date of this Order.

Debtor." *Groner v. Miller*, 262 B.R. 499, 505 (Bankr. App. P. 9th Cir. 2001). The Court "will decline to stay this case pursuant to its inherent authority because doing so would not be the fairest course of action for the remaining parties involved in this case." *Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2019 WL 2372243, at *2 (D. Ariz. June 5, 2019). The Court will deny XPO's motion to stay without prejudice to its refiling, as appropriate, should the procedural posture of these cases change.

V.   **CONCLUSION**

Accordingly,

**IT IS ORDERED denying** XPO's Motion for Transfer of Venue or Stay. (Doc. 25).

**IT IS FURTHER ORDERED denying** Mr. Dellinges's Motion to Dismiss (part of Doc. 15) to the extent that it has not been previously denied.

Dated this 16th day of December, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge