**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Meridian PO Finance LLC, | No. CV-20-00446-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| OTR Tire Group Incorporated, et al., | |
| Defendants. | |

Plaintiff Meridian PO Finance, LLC ("Meridian") moves for Default Judgment against Defendants Jason Adkins, LAD ImpEx Corporation, Midwest Coal LLC, OTR Tire Group Incorporated, and Roadmaster Trucking Incorporated (collectively, "Defendants"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure (Docs. 137, 138, 139, 140, 141). For the following reasons, the Court grants the Motions in part, denies them in part, and awards damages as follows.

## I.    BACKGROUND[1]

Meridian is a financial services company that entered into separate loan agreements with Midwest Coal, LLC ("Midwest") and OTR Tire Group, Inc. ("OTR Tire Group") to finance the purchase of oversized off-the-road ("OTR") mining tires. Meridian entered into one agreement with OTR Tire Group and five agreements with Midwest. (Doc. 144 at 2.)

---

[1] As the Clerk of the Court has entered default (Docs. 50, 51, 52, 53, 54), the Court takes the First Amended Complaint's factual allegations as true. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

Defendant Adkins, as principal of OTR Tire Group and Midwest, executed two loan guaranties, guaranteeing the loan obligations to Meridian. (*Id.* at 2–3.) Meridian alleges that it was one of several victims of Defendants' organized scheme to defraud companies out of millions of dollars through fraudulent transactions relating to OTR tires. According to Meridian, Defendants represented that the OTR tires would be sold to their purported customers, with whom Defendants claimed to have existing relationships. (Doc. 70 ¶¶ 28, 34, 97, 98.) The purchases Meridian financed, however, were either: (1) for tires that would later be used as collateral to illegally obtain other investments or loans; or (2) for tires that had already been sold or otherwise encumbered in other "Ponzi-style" transactions. (Doc. 144 at 3.) In support of this scheme, Defendants produced fraudulent purchase orders from purported clients. (Doc. 70 ¶¶ 75, 76, 138, 157, 176, 193.) Because Meridian did not have a prior working relationship with Defendants, it required a first position secured interest in Defendant's OTR tire inventory. (*Id.* ¶¶ 43, 104.) Despite maintaining that the inventory was free and clear of any liens or encumbrances, unbeknownst to Meridian, Defendants had already pledged some or all of the inventory as collateral in other fraudulent investment schemes. (*Id.* ¶¶ 44, 45.)

In relation to these agreements, LAD ImpEx Corporation ("LAD ImpEx"), a freight forwarder, would purportedly act as an escrow agent handling the loan funds and ensuring their release once the OTR tires arrived at their destination. (Doc. 144 at 3.) This destination was a Houston, Texas storage facility owned by Roadmaster Trucking, Inc. ("Roadmaster"). (*Id.*) In reality, however, LAD ImpEx was secretly controlled by Defendants. (Doc. 70 ¶¶ 79–84.) Midwest and OTR Tire Group defaulted on their loans and assigned ownership in the tires to Meridian. (*Id.* ¶¶ 206, 207.) Despite maintaining that the inventory was free and clear of any liens or encumbrances, unbeknownst to Meridian, Defendants had already pledged some or all of the inventory as collateral in other fraudulent investment schemes. (*Id.* ¶¶ 44, 45, 217.) In 2017, Adkins and an Adkins-owned entity, Landash LLC, declared bankruptcy and listed numerous business entities as his "DBAs," including Midwest and LAD ImpEx. (*Id.* ¶¶ 218–220.) As a result, a bankruptcy

trustee marshaled 148 OTR tires located at the Houston storage facility. (*Id.* ¶¶ 227, 228.) Meridian now claims an ownership interest or, alternatively, a security interest, in 114 of the OTR tires. (Doc. 144 at 4.) Of the 148 OTR tires, 42 had their serial number defaced or were damaged in such a way as to make the tires unidentifiable. (Doc. 70 ¶ 228.)

Meridian's First Amended Complaint alleges: (1) breach of the loan agreements and the implied covenants of good faith and fair dealing against Midwest and OTR Tire Group, (2) breach of contract against Adkins, Midwest, and OTR Tire Group, (3) fraud, conversion, civil conspiracy, and Racketeer Influenced and Corrupt Organizations Act ("RICO") violations against all Defendants, (4) negligence against Roadmaster for its handling of the OTR tires, and (5) that OTR Tire Group, Midwest, and LAD ImpEx are alter egos of Adkins and Roadmaster. Meridian seeks compensatory damages, incidental damages, attorneys' fees pursuant to 18 U.S.C. § 1964(c), pre-judgement and post-judgement interest at the statutory rate, punitive damages, treble damages pursuant to 18 U.S.C. § 1964(c), and costs. (*Id.* at 41.)

Despite being served, or waiving service (*see* Docs. 35, 36, 37, 38, 39), Defendants failed to answer or otherwise respond. (Doc. 137 at 2; Doc. 138 at 1; Doc. 139 at 1; Doc. 140 at 1; Doc. 141 at 2.) The Clerk of the Court has entered default against Defendants. (Docs. 50, 51, 52, 53, 54.) Meridian subsequently filed the pending motions for default judgment. (Docs. 137, 138, 139, 140, 141.) The Court held oral argument and an evidentiary hearing. (Doc. 146.) Defendants failed to appear. (*Id.*)

## II.   LEGAL STANDARD

Once a default is entered the district court has discretion to grant default judgment. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether to grant a default judgment, "[t]he general rule of law [is] that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). While a plaintiff must prove damages when seeking a default judgment, this evidentiary burden is "relatively lenient." *Elektra Ent. Grp. v. Bryant*, No. CV-03-

1   6381-GAF (JTLX), 2004 WL 783123, at *2 (C.D. Cal. 2004).

2   **III.   JURISDICTION, VENUE, AND SERVICE**

3   **A.   Personal Jurisdiction**

4   "When entry of default is sought against a party who has failed to plead or otherwise

5   defend, a district court has an affirmative duty to look into its jurisdiction over both the

6   subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999).

7   "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

8   over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona's long-arm

9   statute conforms with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a). The

10  analysis of personal jurisdiction under Arizona law and federal due process is, therefore,

11  the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir.

12  2004).

13  The Supreme Court has recognized two types of personal jurisdiction: general and

14  specific. *Ford Motor Co. v. Montana Eighth Judicial District Court*, — U.S —, 141 S.Ct.

15  1017, 1024 (2021). A court has general personal jurisdiction, that is personal jurisdiction

16  over "any and all claims," when the defendant is "essentially at home" in the State. *Id.*

17  (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Most

18  often, defendants are subject to general personal jurisdiction in the state of their domicile.

19  *Id.* Whether the Court may exercise general jurisdiction over the defaulting Defendants is

20  not at issue here.

21  Specific personal jurisdiction—limited to a narrower class of claims than general

22  personal jurisdiction—exists when the defendant has taken "some act by which [it]

23  purposefully avails itself of the privilege of conducting activities within the forum State."

24  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 235 (1958)). Specific personal jurisdiction

25  may also be established by party consent, such as through a forum selection clause. *See*

26  *Mallory v. Norfolk S. Ry. Co.*, 143 S.Ct. 2028, 2044 (2023). Such clauses are presumptively

27  valid. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (citing *M/S Bremen v.*

28  *Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). The Court will analyze whether it may

exercise specific personal jurisdiction over Defendants.

### 1. Adkins

Adkins is an Ohio resident. (Doc. 70 ¶ 14.) Adkins guaranteed both the OTR Finance Agreement (Doc. 137-4 at 1–7) and the Midwest Finance Agreement (Doc. 137-4 at 8–12). The guaranties contain identical forum selection clauses stating,

> Guarantor acknowledges that . . ., Guarantor has transacted business in the State of Arizona and Guarantor hereby voluntary submits . . . to the jurisdiction of courts located in the State of Arizona as to all matters relating or arising from this Guarantee . . . **THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF ARIZONA SHALL HAVE SOLE AND EXCLUSIVE JURISDICTION OF ANY AND ALL CLAIMS, DISPUTES, AND CONTROVERSISES ARISING UNDER OR RELATING TO THIS GURANTEE. NO LAWSUIT, PROCEEDING, OR ANY OTHER ACTION RELATING TO OR ARISING UNDER THIS GURANTEE MAY BE COMMENCED OR PROSECUTED IN ANY OTHER FORUM EXCEPT AS EXPRESSLY AGREED IN WRITING BY [MERIDIAN]."**

(Doc. 137-4 at 5–6, ¶ 19; Doc. 137-4 at 11–12, ¶ 19) (emphasis in originals.)

The Court previously found that the forum selection clause is valid and enforceable. *Meridian PO Finance LLC v. OTR Tire Grp. Inc.*, 507 F. Supp. 1148, 1159-60 (D. Ariz. 2020). The Court therefore finds that it has personal jurisdiction over Adkins.

### 2. LAD ImpEx

LAD ImpEx is a Delaware corporation with its principal place of business in New Jersey. (Doc. 70 ¶ 21.) LAD ImpEx did not sign an agreement containing a forum selection clause. As this Court has recognized, however, "the Ninth Circuit has made clear that a forum selection clause extends to 'a range of transaction participants, parties and non-parties.'" *Id*. at 1157 (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)). If "the alleged conduct of the non-parties is so closely related to the contractual relationship . . . the forum selection clause applies to all defendants." *Manetti-Farrow, Inc. v.*, 858 F.2d at 514 n.5; *see also Holland v. Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (finding that non-signatories to a contract were also bound by the forum selection clause).

In earlier proceedings, this Court applied the rule in *Manetti-Farrow* and found that it had personal jurisdiction over XPO Global Forwarding, Inc. and XPO Logistics ("XPO"). Meridian alleged that XPO "was actively involved in the alleged fraudulent scheme." *Meridian PO Fin. LLC*, 507 F. Supp. 3d at 1157–58. For example, XPO had, at Meridian's insistence, expressly assumed responsibility for protecting Meridian's security interest in the OTR tires. *Id.* at 1158. Additionally, XPO assured Meridian that no other person or entity had an interest in the tires and that it would provide Meridian with access to the warehouse where the tires were stored. *Id.* After considering XPO's involvement, this Court concluded that XPO's alleged conduct with respect to the claims asserted by Meridian was "closely related to the OTR and Midwest Finance Agreements." *Id.*

The Court finds that it has personal jurisdiction over LAD ImpEx for similar reasons. As with XPO, Meridian asserts that LAD ImpEx played an important role in the alleged fraudulent scheme. (Doc. 70 ¶ 22–23.) For example, as part of the transaction Meridian required "that a freight forwarder handle the funds and verify shipment of the [OTR tires]." (*Id.* ¶ 78.) LAD ImpEx was hired and thereafter handled the funds for each of the transactions covered by the OTR and Midwest Financing Agreements. (*Id.* ¶ 79.) Once involved in the transactions, LAD ImpEx allegedly funneled money meant for the sellers of the tires to Adkins' various corporate entities, such as Midwest. (*Id.* ¶ 380.)

LAD ImpEx's alleged conduct was an integral part of the scheme giving rise to Meridian's claims, all of which relate to the OTR and Midwest Financing Agreements. Accordingly, the Court finds that LAD ImpEx's alleged conduct with respect to Meridian's claims is "closely related" to the OTR and Midwest Financing Agreements. The Court therefore has personal jurisdiction over LAD ImpEx.

### 3.    OTR Tire Group & Midwest

The OTR Tire Group and Midwest Financing Agreements contain identical valid forum selection clauses. Both OTR Tire Group and Midwest agreed that "any suit, action or proceeding arising out of the subject matter [of the financing agreements] . . . shall, if [Meridian] so elects, be instituted in the United States District Court for the District of the

Controlling State." (Doc. 137-2 at 11, ¶ 21.6; Doc. 137-3 at 11, ¶ 21.6.) The Agreements define the "Controlling State" as Arizona. (Doc. 137-2 at 11, ¶ 1.6; Doc. 137-3 at 11, ¶ 1.6.) Accordingly, the Court finds that it has personal jurisdiction over both OTR Tire Group and Midwest.

### 4.   Roadmaster

Roadmaster is a Texas corporation with its principal place of business in Texas. (Doc. 70 ¶ 19.) Roadmaster did not sign an agreement with a forum selection clause. Meridian argues that Roadmaster's complained of conduct, like that of XPO and LAD ImpEx, is closely related to the OTR and Midwest Financing Agreements. (Doc. 141 at 5.) Meridian therefore alleges that Roadmaster is subject to this Court's jurisdiction under *Manetti-Farrow*. (*Id.*)

As alleged, Roadmaster either negligently allowed for the defacing of the OTR tires' serial numbers, or actively took steps in their defacing. (Doc. 70 ¶¶ 401, 402.) It is further alleged that Roadmaster either negligently allowed for the removal of Meridian's tires from the Houston storage facility or assisted in their removal. (*Id* ¶ 404.) Roadmaster also allegedly involved itself in the fraudulent scheme by assuring Meridian that its investment would be protected and providing Meridian with a copy of an insurance policy to assuage Meridian's concerns. (Doc. 141 at 9.) Like XPO and LAD ImpEx, Roadmaster is alleged to have played a crucial role in inducing the transactions and actively participated in the scheme to defraud.

Roadmaster's alleged conduct played a significant role in the scheme giving rise to Meridian's claims, all of which relate to the OTR and Midwest Financing Agreement. As a result, the Court finds that Roadmaster's alleged conduct with respect to Meridian's claims is "closely related" to the OTR and Midwest Financing Agreements. Accordingly, the Court finds that it has personal jurisdiction over Roadmaster.

### 5.   RICO

Alternatively, 18 U.S.C. § 1965(b) provides personal jurisdiction over all the Defendants. This section of the RICO statute enables "plaintiffs to bring all members of a

nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). To demonstrate that a court has jurisdiction over defendants under § 1965(b):

> the plaintiff must establish (1) that they have sufficiently alleged a multidistrict conspiracy that encompasses the defendants; (2) that the court has personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy; and (3) that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.

*Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, No. CV-06-3093-CJC, 2007 WL 5289737, at *5 (C.D. Cal. Sept. 12, 2007) (citing *Butcher's Union*, 788 F.2d at 539)). The Court finds that the First Amended Complaint adequately alleges a single multidistrict conspiracy encompassing all Defendants. Moreover, as described above, the Court has personal jurisdiction over Adkins, LAD ImpEx, Midwest, OTR Tire Group, and Roadmaster. And there is no other district in which a court has personal jurisdiction over all the alleged co-conspirators because a mandatory forum selection clause requires Adkins, Midwest, and OTR Tire to litigate in Arizona. (Doc. 137 at 3–4, Doc. 139 at 3–4, Doc. 140 at 4.) Accordingly, the Court finds that 18 U.S.C. § 1965(b) facilitates personal jurisdiction over Defendants.

**B.      Subject Matter Jurisdiction**

The Court has original subject matter jurisdiction over the RICO violation claims. *See* 18 U.S.C. § 1964(a) ("The district courts of the United States shall have jurisdiction to prevent and restrain violations of [RICO]."); *see also* 28 U.S.C. § 1331. Meridian alleges a variety of state law claims, also. (Doc. 70 at 24–27, 30–36, 39–40.) These include breach of contract, breach of implied covenant of good faith and fair dealing, fraud, conversion, civil conspiracy, and negligence. (*Id.*) Under 28 U.S.C. § 1367(a), a federal court shall have supplemental jurisdiction over all state-law claims that are within the same common nucleus of operative facts as the claim with original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (stating that supplemental jurisdiction requires that

the "state and federal claims . . . derive from a common nucleus of operative fact"). Because the state-law claims arise from the same common nucleus of operative fact that gave rise to the RICO claims, the Court will exercise supplemental jurisdiction over the state-law claims.

### C. Venue

Venue is proper in this district because a substantial part of the events giving rise to Meridian's claims occurred in the District of Arizona. *See* 28 U.S.C. § 1391(b)(2).

### D. Service of Process

Federal Rule of Civil Procedure 4(e) provides that service is proper by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A–B). Midwest, Roadmaster, and Adkins validly waived service of process. (Docs. 12, 35, 36.) Meridian effectuated service of process on LAD ImpEx, a Delaware corporation, by serving the State of Delaware's Secretary of State under 8 Del. C. § 321(b). (Doc. 38.) Similarly, Meridian served OTR Tire Group, also a Delaware corporation, by serving its statutory agent. (Doc. 39.) Accordingly, the Court finds that the Defendants were validly served.

## IV. DEFAULT JUDGMENT

Once a default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe*, 616 F.2d at 1092; *Brooke v. Sai Ashish Inc.*, No. CV-21-00967-AWI-SAB, 2021 WL 4804220, at *5 (E.D. Cal. 2021) (explaining that default judgment "is a two-step process: an entry of default judgment must be preceded by an entry of default"). The following factors are to be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

1     *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *New Gen, LLC v. Safe Cig, LLC*,

2     840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, Meridian "bears

3     the burden of demonstrating to the Court that the complaint is sufficient on its face and that

4     the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen*

5     *IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct.

6     18, 2021). Meridian also bears the burden of proving damages. *Philip Morris USA, Inc. v.*

7     *Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

8         **A.**     **Adkins**

9           **1.**     **The First, Fifth, Sixth, and Seventh *Eitel* Factors**

10       The first factor weighs in favor of default judgment because denying Meridian's

11    Motion will leave it "without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans.*,

12    238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Prejudice would result if Meridian's Motion

13    were denied because Meridian would lose the right to a "judicial resolution" of its claims.

14    *See Elektra Ent. Grp, Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). And this

15    litigation is the only appropriate recourse for Meridian.

16       The fifth factor also weighs in favor of default judgment because the well-pleaded

17    factual allegations in the First Amended Complaint are taken as true, and there is no

18    "genuine dispute of material facts" that would preclude granting the Motion. *See PepsiCo*,

19    238 F. Supp. 2d at 1177.

20       Because Adkins received a copy of the First Amended Complaint (Doc. 137-1 ¶ 89),

21    waived service of process (Doc. 11), and actively participated earlier in this litigation, it is

22    unlikely that his failure to answer was due to excusable neglect. Therefore, the sixth factor

23    also weighs in favor of entering default judgment.

24       The seventh factor, which favors decisions on the merits, generally weighs against

25    default judgment. But "Rule 55(b) indicates that this preference, standing alone, is not

26    dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal marks and citation omitted). The

27    Court finds that this factor alone is not sufficient to preclude the entry of default judgment

28    in this case. *Warner Bros. Ent. Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004)

(explaining that the seventh *Eitel* factor "standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered").

### 2.    The Second and Third *Eitel* Factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). Meridian has adequately alleged that Adkins breached multiple contracts, committed fraud, conversion, civil conspiracy, and violations of RICO in "soliciting Meridian, other purchasers, and lenders to buy tires or provide financing in fraudulent tire transactions." (Doc. 70 at 37.)

As to Meridian's breach of contract claim, the First Amended Complaint adequately alleges the existence of a contract, its breach, and damages. *See Best W. Int'l, Inc. v. Patel*, 523 F. Supp. 2d 979, 988 (D. Ariz. 2007) (citing *Graham v. Asbury*, 112 Ariz. 184, 185 (1975)). As briefly explored above, Adkins is alleged to have entered in a valid guaranty agreement securing the OTR and Midwest Financing Agreements. (Doc. 70 ¶ 259.) Meridian maintains that Adkins breached this agreement by failing to pay the amounts owed under the agreement, and that it suffered damages as a result. (*Id.* ¶ 263; Doc. 144 at 5–6.) The Court finds that Meridian's claim has merit, and the First Amended Complaint sufficiently alleges a breach of contract claim.

Meridian's First Amended Complaint also adequately alleges a claim of fraud against Adkins. It provides that Adkins represented to Meridian that LAD ImpEx was "trustworthy and that [it] would safeguard the monies related to the purported transactions" when, in fact, Adkins knew that LAD ImpEx was a co-conspirator in the fraudulent transactions. (Doc. 70 ¶¶ 309, 310.) Similarly, the First Amended Complaint also provides that Adkins falsely represented to Meridian that the OTR tires "were free and clear of any liens or encumbrances," that "Midwest had recurring contracts with various buyers," and that there were "five potential [buyers] of OTR tires." (*Id.* ¶¶ 311, 312, 315–317.) It further provides that these misrepresentations "were material to the transaction and Meridian

- 11 -

would not have entered into [the agreements] but for the numerous misrepresentations made by Defendants." (*Id.* ¶ 339.) Moreover, Meridian alleges that Adkins knew his representations were false, that he intended Meridian to rely on them, that Meridian was justified in relying on them, and that Meridian suffered harm as a result. (*Id.* ¶¶ 340−345.) Accordingly, the Court finds that Meridian's fraud claim is well plead. *See Echols v. Beauty Built Homes, Inc.*, 132 498, 500 (1982) (listing the elements for a fraud claim under Arizona law).

The First Amended Complaint provides that Defendants, "by common understanding and design, came to a mutual understating to create false documents and communications . . . to induce Meridian to enter into [the agreements]." (*Id.* ¶ 367.) The Court finds that Meridian has also adequately alleged the existence of "an underlying tort which the alleged conspirators agreed to commit." *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1172 (D. Ariz. 2005) (citation omitted).  Therefore, the Court finds that Meridian has sufficiently stated a civil conspiracy claim.

Meridian also alleges RICO violations under 18 U.S.C. § 1962(c). (*Id.* ¶¶ 373−394.) To state a claim under § 1962(c), a plaintiff must show: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Sedima S.P.R.L. v. Imrex Corp.*, 473 U.S. 479, 496 (1985). The First Amended Complaint provides that "Defendants' actions constitute numerous violations of the RICO predicate offenses" by alleging that "Defendants engaged in numerous counts of wire fraud . . . numerous counts of money laundering . . . and numerous counts of engaging in monetary transactions in property derived from specified unlawful activity . . . ." (*Id.* ¶¶ 383, 384.) And Meridian has adequately plead a pattern of predicate acts that are "indictable" as mail or wire fraud. *See* 18 U.S.C. §§ 1961(1)(B), 1962(c). Therefore, the Court finds the First Amended Complaint adequately states a claim under § 1962(c).

Finally, the Court also finds that the First Amended Complaint states a claim for conversion. Meridian alleges that finance agreement provisions entitled it to possession of the OTR tires upon default. (*Id.* ¶¶ 347, 349.) Meridian maintains that Defendants

"assumed and exercised dominion and control over the OTR [tires] . . . and did so in an unlawful and unauthorized manner, to the exclusion of, and in a manner inconsistent with, Meridian's rights." (*Id.* ¶ 354.) Thus, the First Amended Complaint adequately alleges a conversion claim.

Taking the First Amended Complaint's allegations as true, Meridian has stated a claim on which it can recover. *See NewGen LLC v. Safe Cig LLC*, 840 F.3d 606, 617 (9th Cir. 2016); *Vietnam Reform Party*, 416 F. Supp. 3d at 962. Accordingly, the second and third *Eitel* factors favor the entry of default judgment.

### 3.     The Fourth *Eitel* Factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). And a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Meridian seeks compensatory damages, incidental damages, attorneys' fees, pre-judgement and post-judgement interest at the statutory rate, punitive damages, treble damages, costs, and any further relief that this Court deems just and equitable. (Doc. 70 at 41.) The Court finds that the requested damages are neither disproportionate nor inappropriate.

Because six of the seven *Eitel* factors discussed weigh in favor of Meridian, it is entitled to default judgment on its claims. *Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 WL 6464748, at *2–6 (D. Ariz. Dec. 2, 2019) (granting default judgment where such judgment was supported by all but the seventh *Eitel* factor).

1    **B.    LAD ImpEx**

2         The Court has already identified the seven *Eitel* factors in the context of Mr. Atkins'

3    default judgment. The same is true regarding the applicable law underlying most of

4    Meridian's claims for relief. This substantive law will not be repeated for Meridian's

5    motion for default judgment against LAD ImpEx and the other defaulted defendants.

6              **1.    The First, Fifth, Sixth, and Seventh *Eitel* Factors**

7         For the same reasons as above, the first and fifth factors weigh in favor of default

8    judgment here. The sixth factor also weighs in favor of default judgment because LAD

9    ImpEx was properly served (Doc. 38) and it is unlikely that its failure to answer was the

10   result of excusable neglect. *See Streeter*, 438 F. Supp. 2d at 1072 (explaining that there is

11   no excusable neglect where the defendant was properly served with the complaint). The

12   seventh factor again weighs against default judgment but is not dispositive.

13              **2.    The Second and Third *Eitel* Factors**

14        Meridian's First Amended Complaint adequately alleges that LAD ImpEx

15   committed fraud, conversion, civil conspiracy, and violations of RICO.

16        As to Meridian's fraud claim, the First Amended Complaint provides that Adkins,

17   on behalf of Defendants assured Meridian that LAD ImpEx was "trustworthy and that [it]

18   would safeguard the monies related to the purported transactions" when, in fact, Adkins

19   knew that LAD ImpEx was a co-conspirator in the fraudulent transactions. (Doc. 70 ¶¶ 309,

20   310.) Similarly, the First Amended Complaint states that "Defendants created their

21   fraudulent scheme to induce Meridian to wire the funds . . . to [LAD ImpEx]." (*Id.* ¶ 342.)

22   It further provides that these misrepresentations "were material to the transaction and

23   Meridian would not have entered into [the agreements] but for the numerous

24   misrepresentations made by Defendants." (*Id.* ¶ 339.) Further, Meridian alleges that

25   Adkins knew his representations were false, that he intended Meridian to rely on them, that

26   Meridian was justified in relying on them, and that Meridian suffered harm as a result of

27   its wire to LAD ImpEx. (*Id.* ¶¶ 340–345.) The Court finds that Meridian's fraud claim is

28   well plead. *See Echols*, 132 Ariz. at 500.

The Court also finds that, for the reasons already stated, Meridian adequately alleged a claim for conversion, civil conspiracy, and violations of RICO against LAD ImpEx. Meridian has therefore stated a claim on which it can recover and the second and third *Eitel* factors favor the entry of default judgment.

### 3.       The Fourth *Eitel* Factor

Meridian seeks compensatory damages, incidental damages, attorneys' fees, pre-judgement and post-judgement interest at the statutory rate, punitive damages, treble damages, costs, and any further relief that this Court deems just and equitable. (Doc. 70 at 41.) The Court finds that the requested damages are neither disproportionate nor inappropriate.

Six of the seven *Eitel* factors discussed weigh in favor of Meridian, and it is therefore entitled to default judgment on its claims against LAD ImpEx.

### C.       Midwest

### 1.       The First, Fifth, Sixth, and Seventh *Eitel* Factors

The first and fifth factors again weigh in favor of default judgment. The sixth factor also weighs in favor of default judgment because Midwest waived service of process (Doc. 12) and has been mailed various motions (*See* Docs. 132, 135). It is therefore unlikely that its failure to answer was due to excusable neglect. The seventh factor weighs against default judgment.

### 2.       The Second and Third *Eitel* Factors

Meridian's First Amended Complaint adequately alleges that Midwest breached its contract and the implied covenant of good faith and fair dealing and committed fraud, conversion, civil conspiracy, and violations of RICO.

As to Meridian's breach of contract claim, the First Amended Complaint adequately alleges the existence of a contract, its breach, and damages. *See Best W. Int'l, Inc.*, 523 F. Supp. 2d at 988 (citing *Graham*, 112 Ariz. at 185). As explored above, Midwest is alleged to have entered a valid finance agreement to secure the funds purportedly required to purchase the OTR tires. (Doc. 70 ¶ 245.) Meridian maintains that Midwest breached this

agreement by failing to pay the amounts owed under the agreement and by using the OTR tires as collateral in other transactions. (*Id.* ¶¶ 249, 250.) Meridian also alleges that it suffered damages as a result. (*Id.* ¶ 251.) Similarly, Meridian maintains that Midwest had a "duty not to impair Meridian's right to receive the benefits which should have flowed from [the agreements]" and that Midwest breached the implied covenant of good faith and fair dealing "through its explicit breaches" and by using the agreements "as a means of perpetuating a fraud on Meridian and others." (*Id.* ¶¶ 255, 256.) The Court finds that Meridian's claim has merit and that the First Amended Complaint sufficiently alleges a breach of contract claim and breach of implied covenant of good faith and fair dealing claim.

For the reasons already discussed, the Court also finds that Meridian has adequately alleged a claim for fraud, conversion, civil conspiracy, and violations of RICO against Midwest. Because Meridian has stated a claim on which it can recover, the second and third *Eitel* factors favor the entry of default judgment.

### 3.    The Fourth *Eitel* Factor

Meridian seeks compensatory damages, incidental damages, attorneys' fees, pre-judgement and post-judgement interest at the statutory rate, punitive damages, treble damages, costs, and any further relief that this Court deems just and equitable. (Doc. 70 at 41.) The Court finds that the requested damages are neither disproportionate nor inappropriate.

Because six of the seven *Eitel* factors discussed weigh in favor of Meridian, it is entitled to default judgment on its claims against Midwest.

### D.    OTR Tire Group

### 1.    The First, Fifth, Sixth, and Seventh *Eitel* Factors

For the same reasons as above, the first and fifth factors weigh in favor of default judgment. The sixth factor also weighs in favor because OTR Tire was properly served (Doc. 39) and it is unlikely that its failure to answer was the result of excusable neglect. The seventh factor, though not dispositive, weighs against default judgment.

### 2.    The Second and Third *Eitel* Factors

Meridian's First Amended Complaint adequately alleges that Midwest breached its contract and the implied covenant of good faith and fair dealing and committed fraud, conversion, civil conspiracy, and violations of RICO.

As to Meridian's breach of contract claim, the First Amended Complaint adequately alleges the existence of a contract, its breach, and damages. *See Best W. Int'l, Inc.*, 523 F. Supp. 2d at 988 (citing *Graham*, 112 Ariz. at 185). As explored above, OTR Tire Group is alleged to have entered a valid finance agreement to secure the funds purportedly required to purchase the OTR tires. (Doc. 70 ¶ 245.) Meridian maintains that OTR Tire Group breached this agreement by failing to pay the amounts owed under the agreement and by using the OTR tires as collateral in other transactions. (*Id.* ¶¶ 235, 236.) Meridian also alleges that it suffered damages as a result. (*Id.* ¶ 237.) Similarly, Meridian maintains that Midwest had a "duty not to impair Meridian's right to receive the benefits which should have flowed from [the agreements]" and that Midwest breached the implied covenant of good faith and fair dealing "through its explicit breaches" and by using the agreements "as a means of perpetuating a fraud on Meridian and others." (*Id.* ¶¶ 241, 242.) The Court finds that Meridian's claim has merit and that the First Amended Complaint sufficiently alleges a breach of contract claim and breach of implied covenant of good faith and fair dealing claim.

For the reasons previously stated, the Court also finds that Meridian has adequately alleged a claim for fraud, conversion, civil conspiracy, and violations of RICO against OTR Tire Group. Meridian has stated a claim on which it can recover and the second and third *Eitel* factors therefore favor the entry of default judgment.

### 3.    The Fourth *Eitel* Factor

Meridian seeks compensatory damages, incidental damages, attorneys' fees, pre-judgement and post-judgement interest at the statutory rate, punitive damages, treble damages, costs, and any further relief that this Court deems just and equitable. (Doc. 70 at 41.) The Court finds that the requested damages are neither disproportionate nor

inappropriate.

Because six of the seven *Eitel* factors discussed weigh in favor of Meridian, it is entitled to default judgment on its claims against OTR Tire Group.

### E. Roadmaster

#### 1. The First, Fifth, Sixth, and Seventh *Eitel* Factor

The first and fifth factors weigh in favor of default judgment for the reasons detailed above. The sixth factor also weighs in favor of default judgment because Roadmaster was provided with a copy of the complaint (Doc. 141-1 ¶¶ 38–40), waived service of process through its principal Carlos Musetti (Doc. 35), and participated in earlier litigation, it is unlikely that its failure to answer was due to excusable neglect. The seventh factor again weighs against default judgment but is not dispositive.

#### 2. The Second and Third *Eitel* Factors

Meridian's First Amended Complaint adequately alleges that Roadmaster was negligent and committed fraud, conversion, civil conspiracy, and violations of RICO.

To state a claim for negligence under Arizona law, "a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *CVS Pharmacy, Inc. v. Bostwick ex rel.*, 251 Ariz. 511, 517 (2021) (quoting *Quiorz v. ALCOA Inc.*, 243 Ariz. 560, 563–64 (2018)). As referenced above, Roadmaster owns the Houston facility where the OTR tires were to be stored. (Doc. 70 ¶ 396.) As alleged, Roadmaster was aware of the OTR tire inventory held by Meridian at the facility and it "had a duty of care to Meridian in relation to the warehousing, handling, and shipping of Meridian's OTR tires . . . ." (*Id.* ¶¶ 398, 399.) Meridian further alleges that Roadmaster "had exclusive control over . . . physically handling the OTR tires at the Houston Facility" and it "negligently handled the OTR tires in such a way as the serial numbers on such tires were removed, damaged, or defaced in such a way as to render them unidentifiable." (*Id.* ¶¶ 400, 401.) Meridian alternatively alleges that Roadmaster "took active steps to . . . deface the serial numbers on the OTR tires at the behest of others, but was negligent

in doing so without ensuring that doing so was not in violation of another's rights." (*Id.* ¶ 402.) Finally, the First Amended Complaint states that Roadmaster's breaches "caused damage" to Meridian. (*Id.* ¶ 406.) The Court therefore finds that Meridian's allegations state a valid claim for negligence.

For the reasons already discussed, the Court also finds that Meridian has adequately alleged a claim for fraud, conversion, civil conspiracy, and violations of RICO against Roadmaster. Taking the First Amended Complaint's allegations as true, Meridian has stated a claim on which it can recover. Accordingly, the second and third *Eitel* factors favor the entry of default judgment.

### 3.      The Fourth *Eitel* Factor

Meridian seeks compensatory damages, incidental damages, attorneys' fees, pre-judgement and post-judgement interest at the statutory rate, punitive damages, treble damages, costs, and any further relief that this Court deems just and equitable. (Doc. 70 at 41.) The Court finds that the requested damages are neither disproportionate nor inappropriate.

Because six of the seven *Eitel* factors discussed weigh in favor of Meridian, it is entitled to default judgment on its claims against Roadmaster.

### V.      PIERCING THE CORPORATE VEIL

Meridian's First Amended Complaint alleges that OTR Tire Group, Midwest, and LAD ImpEx are alter egos of Adkins and Roadmaster. (Doc. 70 ¶ 408.) Meridian asks that the Court disregard the entity defendants' corporate form and declare that others, such as the principals of those entities, are liable for Meridian's damages. (*Id.* ¶ 413.)

Meridian's First Amended Complaint generally asserts that the entity defendants were used to further the fraud, did not observe the corporate form, lacked adequate capitalization, and shared a unity of interest and ownership. (*Id.* ¶¶ 408-12.) It does not support these statements with any specific factual allegations. (*See id.*) Meridian did not pursue its alter ego claim in any of its motions for default judgment or at the August 8, 2023, evidentiary hearing. Because the complaint is not "sufficient on its face" with respect

to the alter ego claim, entry of default on that claim would be improper. *Ronald Norris*, 2021 WL 4844116, at *2 (stating that the party seeking default judgment "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment").

## VI.   DAMAGES

Having determined that entry of default judgment is appropriate on all but the alter ego claim, the Court must next address damages. The district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James*, 6 F.3d at 310.

The Court held an evidentiary hearing where Meridian presented witness testimony and exhibits relating to its damages. Defendants were provided notice of the hearing, but they did not appear. (*Id.*) Considering the evidence presented at the hearing, the Court finds that Meridian is entitled to an award of damages.

The first category of damages stems from Meridian's breach of contract claims against Adkins, OTR Tire Group, and Midwest. "The well-established rule in Arizona is that the damages for breach of contract are those which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered into the contract." *S. Arizona Sch. for Boys, Inc. v. Chery*, 119 Ariz. 277, 280 (Ct. App. 1978). As to OTR Tire Group's agreement, Meridian claims that it is owed a total of $10,339,300.26. (Doc. 144 at 5.) As explained at the evidentiary hearing, this amount consists of $1,636,800 in principal and $8,838,687.26 in accrued interest calculated at a daily rate of 0.166% since the loan date of September 11, 2014. This amount also reflects a credit a of $136,187 for the amounts received from the bankruptcy auction proceedings. As to Midwest's agreements, Meridian claims that it is owed a total of $22,785,976. (*Id.*) As explained at the evidentiary hearing, this amount consists of $2,790,000 in principal and $20,219,976 in accrued interest calculated at a daily rate of 0.225% since the four loan dates. This amount also reflects a credit of $224,000 for the proceeds received from the bankruptcy auction. Finally, as to Adkins guaranty agreements, Meridian claims that it is owed a total of $33,125,276. (*Id.* at 6.) As discussed at the

evidentiary hearing, this amount consists of a total of $4,426,800 in principal and $29,058,66.26 in accrued interest—the total accrued interest for the Midwest and OTR Tire Group agreements. Adkins' total amount owed also reflects a credit of $360,187 for the proceeds received from the bankruptcy auction.

The Court finds that the above damages requested for Meridian's breach of contract claims are reasonable and will award damages in the amount of $10,339,300.26 against OTR Tire Group for its breach of contract, $22,785,976 against Midwest for its breach of contract, and $33,125,276 against Adkins for his breach of contract.

The next category of damages relates to Meridian's fraud, civil conspiracy, and RICO claims against all Defendants. The RICO statute provides that "[a]ny person injured in his business or property by reason of a violation . . . may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c). For intentional torts, such as fraud and civil conspiracy, the Court may also award punitive damages "for the purpose of punishing the wrongdoer and deterring others from the same sort of conduct." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 424 (1988). Punitive damages, however, require something more than the mere commission of a tort. *See Agilysis, Inc. v. Vipond*, No. 04-2023-PHX-DGC, 2006 WL 2620103, at *3 (D. Ariz. Sept. 13, 2006). Rather, a plaintiff must show that the defendant engaged in "aggravated and outrageous conduct with an evil mind." *Id.*

Meridian contends that the principal amount of damages is $4,426,800—the total amount of principal it loaned to OTR Tire Group and Midwest. (Doc. 144 at 8.) As established above, the Court finds that Meridian has adequately alleged a pattern of racketeering activities that are indictable as mail or wire fraud. Accordingly, Meridian is entitled to treble damages under the RICO statute. Therefore, the Court will award Meridian $13,280,400, jointly and severally, against all Defendants for the RICO violation claims. Similarly, the Court finds that, taking the First Amended Complaint's allegations as true, Meridian has established that Defendants engaged in an intentional and aggravated course of conduct with an evil mind. Indeed, the Court previously found that the allegations

1    in the First Amended Complaint adequately allege that the Defendants engaged in fraud

2    and a civil conspiracy to commit fraud. Thus, a punitive damage award is appropriate, and

3    the Court will award the requested $8,853,600—i.e., double the principal damages—in

4    punitive damages against all Defendants, jointly and severally.

5        Meridian requests $1,554,292 in damages for its conversion claim against all

6    Defendants and for its negligence claim against Roadmaster. This amount reflects the

7    damages incurred because of the loss or defacement of the OTR tires. (*Id.* at 9.)

8    Specifically, Meridian provided evidence showing that it had 85 OTR tires that were either

9    lost or rendered unidentifiable from defacement. The Court finds Meridian's calculations

10   regarding the largely decreased value of each model of tire to be reasonable. Because the

11   OTR tires were either lost by alleged conversion of all Defendants or through the

12   negligence of Roadmaster, the amount claimed by Meridian for the lost OTR tires is the

13   same for both claims. The Court will award Meridian $1,554,292 against all Defendants,

14   jointly and severally, for the conversion claim. The Court, however, will not allow for

15   double recovery of the value of the OTR tires, and will therefore not award any damages

16   stemming from the alleged negligence claim.

17       Finally, as discussed on the record at the evidentiary hearing, the Court will set off

18   the award against all Defendants to account for the settlement amount received by Meridian

19   in connection with some of the already dismissed defendants. To do this, the Court will

20   reduce the award for the violations of RICO by $1,250,000.

21   …

22   …

23   …

24   …

25   …

26   …

27   …

28   …

## VII.    CONCLUSION

Accordingly,

**IT IS ORDERED** granting Plaintiff Meridian PO Finance LLC's Motion for Default Judgment as to Jason Adkins (Doc. 137), Motion for Default Judgment as to LAD ImpEx (Doc. 138), Motion for Default Judgment as to Midwest Coal (Doc. 139), Motion for Default Judgment as to OTR Tire Group (Doc. 141) and Motion for Default Judgment as to Roadmaster Trucking, Inc (Doc. 141), with respect to all claims except the alter ego claim.

**IT IS FURTHER ORDERED** awarding Meridian PO Finance LLC damages as follows:

1.    $10,339,300.26 against OTR Tire Group Incorporated for its breach of contract

2.    $22,785,976 against Midwest Coal LLC for its breaches of contract.

3.    $33,125,276 against Jason Adkins for his breaches of contract.

4.    $12,030,400 against all Defendants, jointly and severally, for their violations of the Racketeer Influenced Corrupt Organizations Act.

5.    $8,853,600 in punitive damages against all Defendants, jointly and severally.

6.    $1,554,292 against all Defendants, jointly and severally, for their conversion of the OTR tires.

**IT IS FURTHER ORDERED** that Meridian PO Finance LLC shall have thirty days from the date of this Order to file a motion for attorneys' fees and costs that complies in all respects with LRCiv. 54.2.

**IT IS FINALLY ORDERED** directing the Clerk of Court to close this case and enter judgment accordingly.

Dated this 18th day of August, 2023.

Michael T. Liburdi
United States District Judge